UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MEGA AID PHARMACY II, INC.,

Plaintiff,

v.

WELLCARE HEALTH PLANS, INC. ET AL,

Defendants.

**MEMORANDUM AND ORDER**

25-cv-00329 (LDH) (JRC)

LASHANN DEARCY HALL, United States District Judge:

Mega Aid Pharmacy II, Inc. (d/b/a/ Mega Aid Pharmacy) ("Plaintiff") brings this instant action against WellCare Health Plans, Inc. ("Defendant WellCare") and Centene Corp. ("Defendant Centene") (collectively, "Defendants") for tortious interference with business relations and for violating New York General Business Law § 349. Defendants move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Amended Complaint in its entirety.

## BACKGROUND[1]

Defendant Centene is a healthcare company that offers "government sponsored insurance networks," "commercial insurance networks," and is the largest government managed Medicaid care organization in the United States. (Am. Compl. ¶ 20, ECF No. 24.) In March 2019, Defendant Centene acquired Defendant WellCare. (*Id.* ¶ 21.) As a result, Defendant WellCare now operates as Defendant Centene's sole provider of its Medicare plans, including Medicare Part D. (*See id.*) Plaintiff works with over 600 prescribers and physicians to provide compounded medications to over 14,000 patients, of which half are Medicare Part D patients.

[1] The following facts are taken from the Amended Complaint and are assumed to be true for the purpose of this memorandum and order, unless otherwise indicated.

(*Id.* ¶ 17.) Although not detailed in the Amended Complaint, at some point, Plaintiff—an independent pharmacy with expertise in non-sterile compounding—became a member of Defendants' pharmacy network. (*Id.* ¶ 2.)

In a February 9, 2023 notice, Defendants informed Plaintiff that it suspected Plaintiff had engaged in fraud, waste, or abuse and that Plaintiff would be "presented" before Defendants' Pharmacy Network Review Committee ("PNRC"). (*Id.* ¶¶ 1, 30.) Specifically, the notice informed Plaintiff that "[the] action [was] being taken in an attempt to prevent inappropriate costs or services related to prescription drugs dispensed to WellCare and Centene's managed care beneficiaries." (*Id.* ¶ 30.) Based on the findings of the PNRC's review, Defendants would determine if Plaintiff would remain in Defendants' pharmacy network. (*Id.*) Subsequently, on March 27, 2023, Plaintiff engaged in direct dispute resolution with Defendants. (*Id.* ¶ 32.)

On May 4, 2023, Plaintiff received notice that Defendants were terminating Plaintiff from Defendants' pharmacy network effective June 16, 2023, due to Plaintiff's alleged fraud, waste, and abuse. (*Id.* at 33.) Because Centene Medicare plan members are required to use WellCare, (*id.* ¶ 21), Plaintiff's termination from the Defendants' pharmacy network prohibited those plan members from using their insurance with Plaintiff to obtain their medications, (*id.* ¶ 33).

On June 9, 2023, Plaintiff initiated arbitration against Defendants, and on July 26, 2023, the arbitrator granted Plaintiff's application for emergency relief and enjoined Defendants from terminating Plaintiff from Defendants' network during the pendency of the arbitration. (*Id.* ¶¶ 34-35.) According to the Amended Complaint, Plaintiff remained in Defendants' network for the remainder of 2023 without issue. (*Id.* ¶ 35.) However, on January 1, 2024, Defendants employed a new pharmacy benefit manager, Express Scripts, and since that date, Plaintiff has been unable to process prescription claims for its patients in Defendants' pharmacy network. (*Id.*

¶ 36.) Indeed, when Plaintiff attempted to process plan members' claims, each claim received a rejection notice: "Code 40 – 'Pharmacy not contracted with plan on date of service.'" (*Id.* ¶ 38.)

On April 1, 2024, Plaintiff contacted Express Scripts to discuss the rejections. (*Id.* ¶ 39.) Shortly thereafter, on April 10, 2024, Express Scripts informed Plaintiff that Plaintiff was in network for the plan. (*Id.*) Nevertheless, on April 19, 2024, Express Scripts informed Plaintiff that it "does not meet the terms and conditions for participation and, as such, [Plaintiff] is unable to process under [the member's] network." (*Id.* ¶ 40.) On June 11, 2024, Plaintiff commenced a second round of dispute resolution with Defendants. (*Id.* ¶ 41.) And, on June 25, 2024, Defendants notified Plaintiff via letter that Plaintiff is not admitted in Defendants' pharmacy networks due to the original allegations of fraud, waste, and abuse. (*Id.*) Following Defendants' issuance of the June 25, 2024 letter, Plaintiff alleges that "in essence," Defendants intentionally made false communications towards patients and prescribers knowing that it would undercut the relationship between Plaintiff and its patients and prescribers. (*Id.* ¶ 42.) Specifically, Plaintiff alleges that prescribers and patients were "informed of the allegations of [fraud, waste, and abuse]." (*Id.*)

Because Plaintiff was foreclosed from participating in Defendants' pharmacy network, the number of Medicare D patients for which Plaintiff dispensed medication decreased from 400 patients in December 2023 to zero by January 2024. (*Id.* ¶ 41.) Plaintiff documented fifty-four patient inquiries where patients informed Plaintiff that they were "having issue[s] with [Defendants] and inquiring about why they were not able to receive or refill their prescription medications." (*Id.*) At the time of the filing of this action, Plaintiff was not able to process claims for Defendants' pharmacy networks. (*Id.* ¶ 42.)

## STANDARD OF REVIEW

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A court deciding whether to grant a motion to dismiss must "draw all reasonable inferences in [the plaintiff's] favor, 'assume all well-pleaded factual allegations' to be true, and 'determine whether they plausibly give rise to an entitlement to relief.'" *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Further, a court is not obligated to accept a plaintiff's "conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber*, 648 F.3d at 104 (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008)).

## DISCUSSION

### I. Tortious Interference with Business Relationship

"To state a claim for [tortious interference] under New York law, four conditions must be met: (1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 547 F.3d 115, 132 (2d Cir. 2008) (citing *Lombard v. Booz–Allen & Hamilton, Inc.*, 280 F.3d 209, 214 (2d Cir. 2002)). Defendants argue that Plaintiff failed to plead

the first three elements. (Def.'s Mem. Supp. Mot. Dismiss First Am. Compl. ("Def.'s Mem.") at 8-13, ECF No. 30.) The Court addresses those elements in turn.

**A. Business Relationship with a Third Party**

To survive a motion to dismiss for a claim of tortious interference with a business relationship, "[i]n New York, the complaint must plead 'interference with a specific identified business relationship with a third party.'" *Brown Media Corp. v. K & L Gates, LLP*, 586 B.R. 508, 530 (E.D.N.Y. 2018) (quoting *Camp Summit of Summitville, Inc. v. Visinski*, No. 06-cv-4994, 2007 WL 1152894, at *14 (S.D.N.Y. Apr. 16, 2007)). That is, a "'plaintiff must allege a specific business relationship with an identified third party with which the defendants interfered.'" *YCF Trading Inc. v. Skullcandy, Inc.*, 781 F. Supp. 3d 56, 89 (E.D.N.Y. 2025) (quoting *Mehrhof v. Monroe-Woodbury Cent. Sch. Dist.*, 168 A.D.3d 713, 715 (2019)). "New York courts have placed some limits on what constitutes 'business relations' by rejecting, for example, a claim containing 'only a general allegation of interference with customers without any sufficiently particular allegation of interference with a specific contract or business relationship[.]'" *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 262 (2d Cir. 2015) (quoting *McGill v. Parker,* 179 A.D.2d 98, 105 (1st Dep't 1992)).

Against this backdrop, Defendants argue that Plaintiff "never identifies a specific business relationship with which [Defendants] allegedly interfered, *i.e.*, one with a specific patient, prescriber, or other third party," and therefore, the claim should be dismissed. (Def.'s Mem. at 9.)

Here, a review of the Amended Complaint demonstrates that Plaintiff has not pleaded specific business relationships with third parties. Instead, Plaintiff alleges only generally that "[it] has established business relationships with over 600 different prescribers and physicians

who rely on [Plaintiff] to prepare safe and reliable compounded medications," (Am. Compl. ¶ 17); "[Plaintiff] serves over 14,000 unique patients that rely on [Plaintiff]—approximately 50% of which are Medicare Part D patients," (*id.*); "[Plaintiff's] patients rely on Plaintiff to provide them with [] personalized compounds and regularly work very closely with their physicians and [Plaintiff's] pharmacists, so an effective personalized medication is dispensed to these patients," (*id.* ¶ 19); "[Plaintiff] dispensed prescription drugs to well over 400 Medicare Part D patients in [Defendants'] pharmacy network in the month of December 2023 alone," (*id.* ¶ 41). However, these allegations only describe general business relationships and, therefore, are insufficient to withstand a motion to dismiss. *See 16 Casa Duse, LLC*, 791 F.3d at 262 (explaining that claims that do not include any particular allegation of interference with a "specific contract or business relationship" are insufficient).

Still, Plaintiff argues that the allegations raised in the Amended Complaint are sufficiently pleaded because Plaintiff "stated that it lost existing patients and providers and highlighted 54 specific patients who received misinformation from [Defendants]." (Pl.'s Br. Opp'n Defs.' Mot. Dismiss Am. Compl. ("Pl.'s Mem.") at 14, ECF No. 31.)

It is true that Plaintiff alleges that it "documented at least 54 specific patient inquiries regarding [the] issue" of patients not being able to use their insurance with Plaintiff. (Am. Compl. ¶ 41.) However, Plaintiff does not specifically identify who these patients are. (*See generally*, Am. Compl.) Perhaps in anticipation of the Court's review of these pleadings, Plaintiff argues that its failure to list the names of the fifty-four patients should not bar its claim from proceeding because the "information [regarding these fifty-four patients] is highly confidential medical information protected by Health Insurance Portability and Accountability Act ("HIPAA")." (Pl.'s Mem. at 13.) Plaintiff "offered in its Amended Complaint to provide

the list of names under seal should the court require it." (*Id.*) However, in deciding a motion to dismiss, the Court is bound by the four corners of the complaint. If Plaintiff asked to include the information of these patients in a sealed filing, nothing prevented them from doing so. Plaintiff chose not to do so for whatever reason. Plaintiff's failure to identify the specific business relationships, alone, subjects its claim to dismissal.

**B. Interference with Business Relations**

To plead interference with business relations, a plaintiff must allege that the defendant "engaged in 'conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship.'" *MMS Trading Co. Pty Ltd. v. Hutton Toys, LLC*, No. 20-CV-1360, 2021 WL 1193947, at *14 (E.D.N.Y. Mar. 29, 2021) (quoting *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192 (2004)). Importantly, and of particular relevant here, plaintiff's allegations must be pleaded with some level of specificity, as "general allegation[s] of interference with customers without any sufficiently particular allegation of interference with a specific contract or business relationship" will not suffice to substantiate a claim for interference with business relations. *McGill v. Parker*, 179 A.D.2d at 105.

Here, the allegations raised by Plaintiff demonstrate Defendants' conduct was directed toward Plaintiff and not Plaintiff's prescribers or patients. Indeed, as Defendants rightly argue, Plaintiff rests its tortious interference claim on allegations that: "[Defendants] intentionally interfered with [Plaintiff's] relationship with prescribers by unjustly terminating or otherwise preventing [Plaintiff]'s participation in its pharmacy networks," (Am. Compl. ¶ 50); and "[Defendants] acted out of malice by terminating [Plaintiff] from their pharmacy networks for their own financial gain," (*id.* ¶ 52). Even if true, it cannot be said that these actions were directed towards any third party, and therefore, these allegations are insufficient to support a

tortious interference with business relations claim. *See GWG MCA Cap., Inc. v. Nulook Cap., LLC*, No. 17-CV-1724, 2024 WL 3823103, at *5 (E.D.N.Y. Aug. 14, 2024) ("[H]is conduct – the filing of the lawsuit – was not directed at [a third party], however, but rather at [defendant]. As noted above, courts have dismissed tortious interference with business relations claims where the actions complained of were not directed towards a third party.") (citing *Carvel*, 3 N.Y.3d at 192; then *Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157, 168 (S.D.N.Y. 1998); and then *Roelcke v. Zip Aviation, LLC*, No. 15-CV-6284, 2019 WL 10856680, at *7 (S.D.N.Y. Jan. 8, 2019)).

Still, Plaintiff insists that its claim should not be dismissed because it alleged interference by pleading that Plaintiff "lost existing patients and providers and highlighted 54 specific patients who received misinformation from [Defendants]." (Pl.'s Mem. at 14 (citing Am. Compl. ¶ 41).) However, in its Amended Complaint, Plaintiff only alleges that fifty-four patients contacted Plaintiff because they were having issues with Defendant. (Am. Compl. ¶ 41.) Absent from the Amended Complaint is any specific allegation that Defendants contacted these patients. Instead, without attributing any statements to Defendants, Plaintiff merely alleges that "[p]rescribers and patients were informed of the allegations of FWA." (*Id.* ¶ 42.) This is not enough to satisfy this element. *See White v. Abney*, No. 17-CV-4286, 2020 WL 5848647, at *7 (E.D.N.Y. Sept. 30, 2020) (dismissing Plaintiff's tortious interference with business relations claims because "Plaintiff does not allege that Defendants directed any specific statements or conduct toward the third parties with whom Plaintiff transacted business. Nor does he allege facts to support a reasonable inference that Defendants committed *any* act with the intent required to support either tortious interference claim." (emphasis in the original)). Nor is the allegation that Defendants "in essence" made false communications towards patients and

prescribers. As Defendants note, this allegation is too vague to be of value. *See City of Pontiac Police & Fire Ret. Sys. v. BNP Paribas Sec. Corp.*, 92 F.4th 381, 390 (2d Cir. 2024) ("Plaintiffs cannot rely on mere labels and conclusions, or naked assertions absent further factual enhancement." (quotations omitted)). Plainly, Defendants' alleged conduct was directed at Plaintiff and not any third party. Plaintiff failed to plead interference with a business relation.

**C. Wrongful Purpose or Dishonest, Unfair, or Improper means**

To plead wrongful purpose or dishonest, unfair, or improper means, the plaintiff must allege that "the interference with [] business relations was accomplished by wrongful means or where the offending party acted for the sole purpose of harming the other party[.]" *Hello Beautiful Salons, Inc. v. Dimoplon*, 245 A.D.3d 800, 804 (N.Y. App. Div. 2026) (quotation omitted). "The wrongful means supporting a cause of action alleging intentional interference with a business relationship includes acts that constitute a crime or independent tort or other egregious wrongdoing[.]" *Hello Beautiful Salons, Inc.*, 245 A.D.3d at 804 (citing *Stuart's, LLC v. Edelman*, 196 A.D.3d at 713). "New York courts have recognized an exception to this rule 'where a defendant engages in conduct for the sole purpose of inflicting intentional harm on plaintiffs.'" *16 Casa Duse, LLC*, 791 F.3d at 262 (quoting *Carvel Corp.*, 3 N.Y.3d at 190). "But this exception is narrow: when a defendant has acted with a permissible purpose, such as 'normal economic self-interest,' wrongful means have not been shown, even if the defendant was 'indifferent to the [plaintiff's] fate.'" *Id.* (quoting *Carvel Corp.*, 3 N.Y.3d at 190).

Defendants argue Plaintiff's Amended Complaint should be dismissed because Plaintiff's pleading demonstrates that Defendants only "acted to further its own financial interests," and therefore, Defendants did not act for a wrongful purpose. (Defs.' Mem. at 8.) It is axiomatic that to successfully plead a business relationship was wrongly or unfairly interfered with, a

plaintiff must have first successfully pleaded the existence of an interference in the first instance. As discussed *supra*, Plaintiff failed to do so. But even if Plaintiff had made the requisite showing in that regard, the Complaint would still be dismissed because Plaintiff failed to allege Defendant acted for a wrongful purpose.

Plaintiff argues that Defendants engaged in alleged unlawful conduct when Defendants "committed defamation when it made blatantly false representations to [Plaintiff's] patients and subscribers . . . ." (Pl.'s Mem. at 18.) However, it is not until Plaintiff's opposition papers that Plaintiff asserts, for the first time, that Defendants' representations to Plaintiff's customers and prescribers "amounts to the independent tort of defamation." (*Id.*) However, Plaintiff's failure to state a claim of defamation in the Amended Complaint bars the court from considering the alleged defamation for the purpose of Plaintiff's tortious interference with business relations claim. *See Croton Watch Co., Inc. v. Nat'l Jeweler Mag., Inc.*, No. 06 CV 662, 2006 WL 2254818, at *9 (S.D.N.Y. Aug. 7, 2006) ("The failure of plaintiff to state a cognizable claim for defamation precludes plaintiff from premising its tortious interference cause of action upon the purportedly defamatory conduct."). This view is consistent with this Court's long-invoked rule that "a party cannot assert a claim for the first time in its motion papers, nor can it attempt to amend its complaint through its motion papers." *Vesterman v. Dep't of Educ. of City of New York*, No. 24-CV-02755, 2025 WL 2782408, at *7 (E.D.N.Y. Sept. 30, 2025), *aff'd sub nom. Vesterman v. New York City Dep't of Educ.*, No. 25-2731-CV, 2026 WL 1580250 (2d Cir. June 3, 2026) (citations omitted). Accordingly, Plaintiff's reliance on Defendants' alleged unlawful defamatory conduct cannot serve as a basis to support the third element of its claim.

Plaintiff also argues that it alleged wrongful means because Defendants "indisputably knew of the falsehood of these statements when it made them, as [Defendant] had just lost a

motion before the arbitrator on that basis." (Pl.'s Mem. at 21.) But this argument is of no aid to Plaintiff's claim because the Second Circuit has made clear that "[w]hen a defendant has acted with a permissible purpose, such as normal economic self-interest, wrongful means have not been shown . . . ." *16 Casa Duse, LLC*, 791 F.3d at 262 (quotation omitted). Plaintiff's Amended Complaint is brimming with allegations that Defendants acted for their own economic interest. Indeed, Plaintiff alleges that: "[Defendant] Centene is driven by profits rather than providing services that are in the best interests of its patient members or adhering to the law," (Am. Compl. ¶ 20); "[Defendants] have conjured up baseless allegations of [fraud, waste, and abuse] against Plaintiff to disguise Defendants' true motive for preventing Plaintiff from participating in [Defendants'] pharmacy network, which is strictly financial," (*id.* ¶ 29); "Although [Defendants'] motives behind their intentional actions were also financial in nature . . . , [Defendants] also took action to further control the pharmacy marketplace," (*id.*); Defendants' February 9, 2023 letter stated that Defendants were taking action "in an attempt to prevent inappropriate costs or services related to prescription drugs dispensed to [Defendants'] managed care beneficiaries," (*id.* ¶ 30); "[Defendants] notified [Plaintiff] that it was concerned with the costs related to the prescription drugs that [Plaintiff] dispensed," (*id.*); and "[Defendants] acted out of malice by terminating [Plaintiff] from their pharmacy networks for their own financial gain," (*id.* ¶ 52). Because Plaintiff alleges that Defendants acted for their economic self-interest, wrongful means cannot support Plaintiff's claim for tortious interference with business relations. Plaintiff's tortious interference with business relationship claim is, therefore, dismissed.

## II. New York General Business Law § 349

New York General Business Law § 349 "prohibits '[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state.'"

*Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233, 258 (2d Cir. 2021) (quoting N.Y. Gen. Bus. Law § 349(a)). "To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Id.* (quoting *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009)). "[T]o successfully state a claim under Section 349 'the gravamen of the complaint must be consumer injury or harm to the public interest.'" *Id.* (quoting *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995)). That is, "a plaintiff must demonstrate that the § 349 claim implicates consumer oriented conduct by the defendant." *Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121, 126 (2d Cir. 2000) (quotation omitted). "If the plaintiff shows that the conduct is consumer-oriented within the meaning of the statute, the plaintiff must then show that the defendant has engaged in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof." *Id.* (quotation omitted). Section 349 is not, however, intended to be a "sword to be wielded in business-versus-business disputes . . . where the party asserting the claim is not acting in a consumer role." *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 636 (2d Cir. 1996) (quoting Richard E. Givens, *Overall Scope of General Business Law §§ 349–350,* Supplementary Practice Commentaries 166, 167 (McKinney Supp. 1996)). Accordingly, absent any allegation that a plaintiff—itself—is a consumer, a plaintiff must allege that the defendant's deceptive conduct is directed at some non-business consumers. *Spirit Locker, Inc. v. EVO Direct, LLC*, 696 F. Supp. 2d 296, 304 (E.D.N.Y. 2010) ("In short, though businesses may sometimes bring § 349 claims, they may do so only where the defendant's deceptive conduct is, at least to some extent, directed at non-business consumers.").

Defendants argues this claim should be dismissed for two reasons: *First*, Defendant argues that Plaintiff failed to allege that Defendants engaged in deceptive acts directed at third-party consumer. (Defs.' Mem. at 16-18.) And *second*, Defendants assert that Plaintiff "has not established a deceptive act under Section 349, because [Plaintiff] never specifies any representations [Defendants] made to any consumer, likely to mislead." (*Id.* at 18.) Plaintiff argues that its allegations that Defendants' attempt to "cripple compounding pharmacies and preclude patients from benefiting from their unique and medical necessary services" is sufficient to sustain consumer-oriented conduct. (Pl.'s Mem. at 23.) Plaintiff also argues that it "clearly alleges that Defendants made knowing misrepresentations to patients by stating that [Plaintiff] was removed from the network because it did not comply with [Defendants'] terms and conditions and it committed [fraud, waste, or abuse]." (*Id.* at 24.)

Here, Plaintiff directs the Court to at least two allegations to support its claim that Defendants' conduct was consumer oriented. *First*, Plaintiff alleges that "[Defendant] is intentionally, without justification, requiring Members to pay out-of-network costs for customized medication." (Am. Compl. ¶ 24.) Plaintiff also alleges that due to the U.S. Department of Health and Human Resources "scrutinizing the improper denial of otherwise valid prescription claims by plan sponsors," Defendants have "opted for a new tactic," which is the "wholesale exclusion of pharmacy providers, like [Plaintiff], from its networks to eliminate the need to deny claims on an individualized, prescription-by-prescription basis." (*Id.* ¶ 26.) Against these facts, Plaintiff argues that Defendants are targeting consumers by covertly eliminating their ability to obtain compounding medications. (Pl.'s Mem. at 23.) To agree with Plaintiff would require the Court to draw unreasonable inferences. Indeed, it is inescapable that

the gravamen of the Amended Complaint relates to Defendants' termination of Plaintiff from its networks as opposed to consumer injury or harm to the public interest.

From end to end, the Amended Complaint is replete with allegations that Defendants took actions that are directed towards Plaintiff. (*See, e.g.,* Am. Compl. ¶ 2 ("Defendants arbitrarily excluded [Plaintiff] from the [Defendants'] networks by conjuring up baseless allegations of [fraud, waste, and abuse] against [Plaintiff]."); *id.* ¶ 4 ("[Defendants] devised a plan to engage in further improper business practices aimed at interfering with [Plaintiff's] business relationships with patients by keeping [Plaintiff] out of its networks in violation of applicable law."); *id.* ¶ 5 ("[Defendants] . . . refused to abide by the governing arbitration order that restricted and prohibited [Defendants] from terminating [Plaintiff] from their pharmacy networks."); *id.* ¶ 6 ("Defendants' improper, dishonest, and illegal conduct has caused [Plaintiff] substantial and ongoing harm."); *id.* ¶ 19 ("This unique and vital relationship that was cultivated by [Plaintiff] has been intentionally broken due to [Defendants'] deliberate act of barring [Plaintiff] from its pharmacy network with no justification."); *id.* ¶ 23 ("[Defendants'] actions profoundly impacted [Plaintiff's] ability to establish and maintain relationships with its prescribers and patients.); *id.* ¶ 29 ("[Defendants] have conjured up baseless allegations of [fraud, waster, and abuse] against [Plaintiff] to disguise Defendants' true motive for preventing Plaintiff from participating in [Defendants] pharmacy network . . . ."); *id.* ¶ 31 ("[Defendants] alleged four separate baseless 'compliance issues' which led to [Plaintiff] being reviewed by the PNRC."); *id.* ¶ 41 ("[Defendants] insist on preventing [Plaintiff's] readmission into the[Defendants'] pharmacy networks for alleged issues . . . ."); *id.* ¶ 58 ("[Defendants'] conduct against [Plaintiff] was deceptive and misleading because [Defendants] are falsely alleging that [Plaintiff] committed [fraud, waste, and abuse] . . . .); *id.* ¶ 59 ("[Defendants'] conduct against [Plaintiff] was

deceptive and misleading because Defendants unjustly terminated or otherwise prevented [Plaintiff's] participation in their pharmacy network . . . .").) Plaintiff attempts to mask its business-to-business dispute as pleading for a consumer injury or harm to the public interest, but it is not.

In addition, Plaintiff failed to allege that Defendants' act or practice was misleading in a material respect. Relying on its arguments for its tortious interference with business relations claim, Plaintiff argues that it alleged Defendants' purportedly deceptive acts were unlawful and made through wrongful means. (Pl.'s Mem. at 24.) According to Plaintiff, "these allegations are sufficient to establish a deceptive act, and [Defendant] cites to no authority indicating otherwise." (*Id.*) Not so. As this Court discussed *supra*, Plaintiff failed to allege that Defendants' actions were unlawful because Plaintiff did not plead defamation, and because Plaintiff pleaded that Defendants operated for their own economic interest, Plaintiff cannot allege wrongful means.[2] Accordingly, Plaintiff's claims under New York General Business Law § 349 are dismissed.

## III. Leave to Amend

Plaintiff requests leave to file a second amended complaint but does not offer any detail on what allegations or causes of action it intends to include in any new filing. To the contrary, Plaintiff "maintains that its allegations are more than sufficient to satisfy Rule 8's pleading standards . . . ." (Pl.'s Mem. at 25.) To that end, Plaintiff did not provide the Court with a

[2] Plaintiff repeatedly claims that Defendants falsely accused it of fraud, waste, and abuse, which Plaintiff seems to allege is false because of the arbitrator's July 16, 2023 Order, which enjoined Defendants from terminating Plaintiff from their network. However, the Court notes that, as Plaintiff pleaded, the arbitrator "enjoined the termination during the pendency of the arbitration[]." (Am. Compl. ¶ 35.) Plaintiff does not allege that the arbitrator's decision was based on the merits of the dispute. There is also no allegation that the arbitration proceedings have concluded. Moreover, Plaintiff brings no claims to enforce the arbitrator's order nor does Plaintiff bring any claim that would otherwise permit the Court to conclude that Plaintiff properly raises a claim that Defendant's alleged statements could otherwise be misrepresentations.

formal motion setting forth a legal basis for amending its complaint, nor has Plaintiff provided the Court with a proposed amended complaint. For these reasons, Plaintiff's request may be rightly denied. *See In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 220 (2d Cir. 2006), *abrogated on other grounds by F.T.C. v. Actavis, Inc.*, 570 U.S. 136 (2013) ("It is within the court's discretion to deny leave to amend implicitly by not addressing the request when leave is requested informally in a brief filed in opposition to a motion to dismiss." (citation omitted)); *see also Malin v. XL Capital, Ltd.*, 312 F. App'x 400, 403 (2d Cir. 2009) (summary order) (affirming denial of leave to replead where plaintiff, among other things, (1) did not make a formal motion for leave to amend and (2) did not proffer an amended pleading for the district court's review).

Moreover, although Rule 15(a) provides that leave to amend should be freely given, the Second Circuit has consistently held that "'it is within the sound discretion of the district court to grant or deny leave to amend.'" *Morency v. NYU Hosps. Ctr.*, 728 F. App'x 75, 76 (2d Cir. 2018) (summary order) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). "The liberality with which a court grants leave to amend does not impart to litigants the privilege of re-shaping their legal theories endlessly." *Id.* (citation omitted). The Court held a pre-motion conference in anticipation of Defendants' motion to dismiss to discuss deficiencies in the original complaint. (*See* June 25, 2025 Order.) Following the pre-motion, the Court granted Plaintiff leave to amend its complaint. (*See* June 26, 2026 Minute Entry and Order.) Accordingly, the Court declines Plaintiff's invitation to reshape their legal theories. Plaintiff's motion to amend is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint in its entirety is GRANTED. Plaintiff's motion for leave to file a second amended complaint is DENIED. The Clerk of Court is respectfully directed to enter judgment in accordance with this memorandum and opinion and close the case.

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2026

/s/ LDH
LASHANN DEARCY HALL
United States District Judge